344 So.2d 983 (1977)
STATE of Louisiana
v.
Roma YOUNG.
No. 58707.
Supreme Court of Louisiana.
April 11, 1977.
*985 Robert F. DeJean, Sr., Opelousas, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant, Roma Young, was charged by bill of information with second degree murder, for the fatal shooting of her husband, Clovees Young. La.R.S. 14:30.1. She was convicted by a twelve member jury, and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for a period of twenty years. On appeal defendant relies on five assignments of error for reversal of her conviction and sentence.

ASSIGNMENTS OF ERROR NOS. 1 and 2
Defendant, in these assignments, complains that the trial judge improperly admitted *986 into evidence over timely objection, a written confession executed by the defendant at the Beauregard Parish Sheriff's Office in DeRidder, Louisiana, some two hours after the shooting. Defense counsel had unsuccessfully opposed admission of the statement arguing that defendant had been hysterical at the time it was taken, and had therefore been unable knowingly and intelligently to exercise her constitutional rights; that the written statement was a direct product of prior inculpatory statements elicited by the police at the crime scene at a time when defendant was clearly incapable of understanding and exercising her constitutional rights; and that the interrogating officers had violated defendant's constitutional rights by refusing to allow her to confer with counsel before taking the written statement.
Evidence adduced at trial established that the shooting occurred at the Young's mobile home near Ragley, Louisiana, in Beauregard Parish, shortly before two o'clock on the afternoon of August 10, 1973. Deputy James McCarty, of the Beauregard Parish Sheriff's Office, was the first law enforcement officer to reach the scene. When he arrived he found the defendant kneeling over her mortally wounded husband, in a state of obvious emotional distress. She spontaneously declared:
"Why did I do itI love him so much God don't let him die."
After securing the crime scene and tending to the wounded victim, Deputy McCarty questioned Mrs. Young about the shooting. Before doing so, however, he advised her of her constitutional rights. In response to this questioning defendant admitted that she shot her husband when he informed her that he was leaving her. The oral inculpatory statements elicited by Deputy McCarty at the crime scene were not presented to the jury, as the trial judge ruled them inadmissible on the theory that defendant was so emotionally upset at the time, she could not have understood her rights as they were given to her, and therefore had not knowingly and intelligently waived them.[1]
Clovees Young was taken by ambulance to a hospital in Lake Charles, where he died as a result of his wounds. At Deputy McCarty's request, Roma Young was taken to the Sheriff's Office in DeRidder. After again being advised of her rights, and after signing a waiver of rights form, Mrs. Young dictated a type-written statement, admitting that she shot her husband. She read the statement after it was completed, initialed certain corrections, then signed it. This statement was taken between 4:00 and 4:15 p. m., a little more than two hours after the shooting. Defendant was thereafter placed under arrest.
The trial judge ruled that the written inculpatory statement executed by the defendant at the Sheriff's Office in DeRidder was admissible, apparently accepting the testimony of the three law enforcement officers who had been present when it was taken that Mrs. Young appeared reasonably calm, that she indicated her desire to waive her rights after she was informed of them, and that she was neither threatened nor promised anything in exchange for her statement.
Defense counsel first contends that the record shows Mrs. Young, at the time she executed the written confession, was emotionally distraught and hysterical, and therefore unable to give a free and voluntary statement. Our examination of the record, however, reveals abundant evidence upon which the trial judge could rely, supporting his conclusion that defendant had calmed down and was not, at the time the written statement was executed, in such a state of emotional distress as to be unable to waive her constitutional rights. The trial judge's factual determination in this respect is entitled to great weight, and will not be overturned absent clear abuse. State v. Hills, 337 So.2d 1155 (La.1976); State v. Alexander, 328 So.2d 144 (La.1976); State v. White, 321 So.2d 491 (La.1975); *987 State v. Scott, 320 So.2d 538 (La.1975). No abuse or error has been demonstrated by defendant in this instance.
Defense counsel next argues that the written statement should have been excluded because it was a direct product of the earlier oral statements which the trial court had excluded on the ground that the defendant had been emotionally unable to understand and waive her constitutional rights.
As we said in State v. Davis, 336 So.2d 805 (La.1976):
"* * * In securing evidence, the state may not obtain a first statement by violation of constitutional safeguards, and then claim that a second confession secured by reason of the illegal first confession is admissible because (directly as the result of the first illegal admissions) the accused now again freely admits his guilt (since he has already `confessed', albeit the alleged confession is illegal and inadmissible). See Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
"Nevertheless, if the second confession is truly voluntary and is not a product of the first, it is not inadmissible simply because of any technical deficiency in the Miranda warnings given before the first interrogation. The second confession may nevertheless be admissible, if (granting establishment of the prior technical illegality) it is not obtained by exploitation of the initial illegality, but instead is shown by the state to be sufficiently an act of free will entirely purged of and independent of the primary taint. See Brown v. Illinois at 95 S.Ct. 2259 (1975)." (Emphasis supplied.) 336 So.2d at 807.
Further, we acknowledged in State v. Welch, 337 So.2d 1114 (La.1976), that
"When a defendant urges suppression of an inculpatory statement given subsequent to a prior inculpatory statement that is inadmissible because it is not free and voluntary or because the Miranda directives were not followed in conducting interrogation leading to the initial confession, the proper inquiry is whether the conditions that rendered the earlier confession inadmissible carried over to invalidate the subsequent one. Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967); Randall v. Estelle, 492 F.2d 118 (5th Cir. 1974) * * *." (Emphasis supplied) 337 So.2d at 1120.
Applying the principles articulated in these cases to the particular facts presented in the present case, we conclude that defendant's written confession was sufficiently removed in circumstance from the previous oral statements to eliminate whatever taint might have been created by the earlier statements, even assuming, without ruling upon, their inadmissibility. The oral and written statements were separated by approximately two hours, and the defendant had undergone considerable emotional change. Before the written statement was taken, defendant was once again fully informed of her constitutional rights under Louisiana Constitution Article I, § 13 (1974), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and she indicated that she understood and desired to waive them, and signed a waiver of rights form to that effect. Defendant then dictated a statement to the typist, read it, initialed minor corrections, and signed it. We are satisfied, based on our examination of the record, that the State demonstrated that defendant's written confession was an act of her free will, completely independent of her earlier oral statement, and as such was properly admitted.
Defense counsel finally argues that the written confession should have been excluded because defendant was not afforded an opportunity to confer with counsel. Deputy McCarty testified that after being advised of her rights and prior to signing the waiver of rights form, defendant indicated to him that she had talked to an attorney in Lake Charles about marital problems she had been having, and asked him whether he thought she should contact *988 that attorney. Deputy McCarty responded that he could not answer that question for herthat she would have to make up her own mind, "but that she had the right to call him right now and to seek counsel with him and also to have an attorney present." Defendant gave no indication that she wished to exercise her right to confer with counsel. Instead she signed the waiver of rights form and made her statement.
We find no violation of Miranda in Deputy McCarty's comments. He was not obliged to express his personal opinion to the defendant. What he did tell her satisfied the guidelines set down by the United States Supreme Court in Miranda v. Arizona, supra.
For the foregoing reasons, we find no reversible merit in defendant's first and second assignments of error.

ASSIGNMENT OF ERROR NO. 3
After the State rested its case-in-chief, defendant called a number of witnesses[2] in an effort to establish the dangerous character of the deceased, in order to support her claim of self defense. Defendant's several attempts to elicit this testimony were frustrated when the trial judge, in each instance, sustained the State's objection that such character evidence was inadmissible until a proper foundation was established. Defendant complains that this ruling improperly forced her to take the stand to provide a foundation for the character evidence.
La.R.S. 15:482 provides:
"In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."
Defendant argues that evidence of an overt act of aggression or hostility by the deceased against the accused had already been adduced by cross-examination at the time the trial judge made his rulings. Defendant apparently refers to the testimony of Deputy James McCarty which was elicited during cross-examination on the predicate to the admission of defendant's written confession. At this time Deputy McCarty testified that he had obtained a warrant to search the Young residence some three days after the shooting because he was informed by two of defendant's neighbors that the defendant had told them after the incident that her husband had attacked her with a kitchen knife. However, when this testimony was given the jury had been removed from the courtroom.
Deputy McCarty's testimony, given out of the presence of the jury, was not "evidence of hostile demonstration or of overt act on the part of the person slain" within the contemplation of La.R.S. 15:482. The overt act foundation requirement must be satisfied by a proper introduction of admissible "evidence of hostile demonstration or of overt act on the part of the person slain" before the fact-finder. Professor Wigmore explains the purpose of the overt act foundation requirement:
"When the issue of self-defense is made in a trial for homicide, and thus a controversy arises whether the deceased was the aggressor, [emphasis in original] one's persuasion will be more or less affected by the character of the deceased; it may throw much light on the probabilities of the deceased's action:
"* * *

"There ought, of course, to be some other appreciable evidence of the deceased's aggression, for the character-evidence can hardly be of value unless there is otherwise a fair possibility of doubt on the point; [emphasis supplied] moreover, otherwise the deceased's bad character is likely to be put forward to serve improperly as a mere excuse for the killing, under the pretext of evidencing his aggression, and it is often feasible to obtain untrustworthy character-testimony for *989 that purpose. * * *" I Wigmore on Evidence, § 63 at pp. 467-70 (3d ed. 1940).
The effect, then, of such character evidence is a matter to be weighed by the finder of fact, and the trier is hampered in its ability to do so unless it is also presented with "appreciable evidence of the deceased's aggression."
Since, at the time defendant unsuccessfully attempted to elicit character evidence regarding the deceased's violent nature, no evidence of specific overt acts of violence or hostility by him against the accused had been presented to the jury, we cannot conclude that the trial judge erred in excluding the character evidence. The foundation required by La.R.S. 15:482 had not been laid.
Subsequent to the rulings of the trial judge excluding character evidence of the deceased's violent nature, defendant called Deputy McCarty, and in the presence of the jury elicited testimony similar to that previously given out of the presence of the jury. Defense counsel did not then recall the character witnesses whose testimony had been previously excluded. Instead he called the defendant to the stand, and she repeated her version of the incident, including her assertion that the deceased had attacked her with a knife. It was only after she testified, that defense counsel recalled the character witnesses and elicited their testimony concerning the bad character of the deceased. In view of these events, we cannot conclude that the trial judge's earlier rulings, which we find were correct, had the effect of forcing the defendant to take the stand.
We find defendant's third assignment of error without merit.

ASSIGNMENT OF ERROR NO. 4
Mr. Lloyd Jackson, a friend and neighbor of the accused, was called to testify in behalf of the defendant. As the State's cross-examination of this witness was apparently being concluded, the trial judge, because of the late hour, recessed court until the following morning. When court reconvened, the State expressed a desire to cross-examine Mr. Jackson further. However, Mr. Jackson, who had neither been dismissed by the court nor released from the court's sequestration order, was not present and available for continued cross-examination. At the State's request a bench warrant commanding his attendance was issued.
Defendant contends the trial court erred in forcing her to interrupt the orderly presentation of her case by permitting the State to recall and continue cross-examination of Mr. Jackson, after examination of the defendant's final witness.
This assignment is groundless. Not only did defendant fail to object to the procedure utilized by the trial judge in this extraordinary situation, the record clearly indicates that it was at defense counsel's suggestion that the defendant's final witness was called and examined before the State concluded its cross-examination of Mr. Jackson.
No prejudice whatsoever is alleged or demonstrated by this assignment of error, which we find utterly without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in commenting on the evidence presented in the case. The record does not show that defendant objected to the trial judge's comments. La.C.Cr.P. art. 841; cf. State v. Refuge, 300 So.2d 489 (La.1974).
This assignment is without merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
NOTES
[1] The correctness of this ruling is not before us in this appeal, and we specifically withhold judgment on whether the oral statements were properly excluded by the trial judge.
[2] The witnesses called were the accused's physician, the accused's daughter, and a friend and neighbor of the accused.