419 So.2d 425 (1981)
STATE of Louisiana
v.
Rosetta K. JACKSON.
No. 81-KA-0422.
Supreme Court of Louisiana.
December 14, 1981.
On Rehearing September 7, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Samuel C. Cashio, Dist. Atty., Houston C. Gascon, III, Jack T. Marionneaux, Asst. Dist. Attys., for plaintiff-appellee.
John E. Bride, Asst. Indigent Defender, Sunshine, for defendant-appellant.
BLANCHE, Justice.[*]
Defendant, Rosetta K. Jackson, was charged by grand jury indictment with second degree murder, a violation of R.S. 14:30.1. Defendant was convicted by unanimous vote of the jury and the court sentenced her to life imprisonment. The defendant appealed relying on two assignments of error. We affirm.

Assignment of Error Number 1
The defendant contends the trial judge erred in overruling her objection to allegedly leading questions the prosecutor asked a witness for the state. A leading question is one which suggests to the witness the answer he is to deliver, and though framed in the alternative, is inadmissible when propounded to one's own witness, unless such witness is unwilling or hostile. R.S. 15:277. The reason for this is the danger that a witness may acquiesce in a false suggestion. State v. Francis, 337 So.2d 487 (La.1976). During the redirect examination of the coroner by the state, the following colloquy took place:

*426 "Q. Then the bullet entered the mouth when it was open?
A. Yes, sir, as far as we could tell.
Q. Were teeth knocked out as a result of
Mr. Bride: Objection, Your Honor, the
A. Yes, two upper incisors.
The Court: Just a minute, Doctor, when an objection is made, please refrain from answering until the Court has an opportunity to hear the objection.
Mr. Marionneaux: Your Honor, he is an expert witness and I can lead him.
The Court: Well, I don't know what the basis of the objection was, Mr. Marionneaux.
Mr. Bride: It was on a leading question, Your Honor.
The Court: The objection is overruled. Proceed.
Q. Were teeth knocked out as a result of the entrance of the bullet?
A. Presumably.
Q. There were teeth missing?
Mr. Bride: Again, I am going to object. If he is an expert, he hasn't been qualified as such.
The Court: Mr. Marionneaux, do you wish to rephrase your question?
Mr. Marionneaux: Yes, sir.
Q. From your personal observation, were there any teeth missing in the mouth of the decedent?
A. In the emergency room, polaroid photographs were made and there is a view which distinctly shows the absence of the incisor upper teeth."
Control of the examination of witnesses is within the sound discretion of the trial judge. Absent a showing of an abuse of discretion, this Court will not disturb the trial court's ruling. State v. Carter, 363 So.2d 893 (La.1978). Further, even if these questions were improper, the defendant has failed to show any prejudicial effect that the question had on her defense. Although counsel should not be permitted to mold the witness' testimony, a verdict should not be reversed in the absence of a clear abuse calculated to prejudice the accused's rights. State v. Swift, 363 So.2d 499 (La.1978); State v. Sheppard, 350 So.2d 615 (La.1977).
This assignment lacks merit.

Assignment of Error Number 2
The defendant contends the trial judge erred when he refused to allow the defense counsel to question witnesses about the dangerous character of the victim in support of the defendant's plea of self-defense under R.S. 14:20.
Evidence of the decedent's dangerous character or his threats against the accused is admissible in support of a plea of self-defense, provided that the accused first produces evidence that the decedent made a hostile demonstration or overt act against the accused at the time of the incident. See R.S. 15:482.
"The reason for the overt act foundation requirement has been expressed as follows:
`There ought, of course, to be some other appreciable evidence of the deceased's aggression, for the character-evidence can hardly be of value unless there is otherwise a fair possibility of doubt on the point; moreover, otherwise the deceased's bad character is likely to be put forward to serve improperly as a mere excuse for the killing, under the pretext of evidencing his aggression, and it is often feasible to obtain untrustworthy character-testimony for that purpose.'
I Wigmore on Evidence, § 63 (3d ed. 1940). See State v. Young, 344 So.2d 983 (La.1977); State v. Lee, infra."

In the case at bar, we feel that the requisite foundation was established by the testimony of William Knight, the brother of both the victim and the defendant. William Knight and the defendant testified to substantially the same sequence of events immediately prior to the shooting as set forth below.
On January 2, 1980, the defendant, the victim and Mr. Knight and other family *427 members were present at a family gathering at the home of their mother in Dorseyville, Louisiana. There was a disagreement between the defendant and the victim over which record to play and an argument ensued during which the victim began stepping on the defendant's feet. The victim would not stop arguing so Mr. Knight carried her out of the house and she went to the car, came back to the door of the house, and threatened the entire family. Defendant went outside, intending to leave for the evening, approximately ten to twenty minutes later, and as she was walking toward the car that was coming to pick her up, the victim approached her with her right hand held behind her back. The victim was cursing the defendant as she approached and the defendant begged her to stay away. The defendant fired a warning shot into the ground when the victim continued to advance on her with her hand still behind her back. Defendant fired a second shot which was aimed low and hit the victim in the leg, but this also failed to halt her advance. The defendant was now backed up against another car which was parked in the yard and she fired the fatal shot when the victim was close to her and still advancing. This shot hit the victim in the mouth, transecting the spinal cord, and was the immediate cause of death.
The evidentiary foundation necessary under R.S. 15:482 to introduce testimony as to the victim's dangerous character is appreciable evidence of an overt act against the defendant. An overt act by the victim must be one which would cause a reasonable man to fear that he is in imminent danger of great bodily harm. State v. King, 347 So.2d 1108 (La.1977). The circumstances described here were sufficient to meet this evidentiary prerequisite. The fact that the victim continued to advance on the defendant in a hostile and frightening manner even after the defendant had fired two shots was enough to make the defendant believe that the victim was concealing a weapon. The relevant inquiry is not whether or not the victim actually had a weapon behind her back, but whether or not the defendant could reasonably believe she did. In this case, the defendant could have reasonably believed that she was in imminent danger of death or great bodily harm.
When appreciable evidence is in the record relevantly tending to establish the overt act, the trial court cannot exercise its discretion to infringe on the fact determination function of the jury by disbelieving this defense testimony and, thus, deny the accused a defense permitted him by law. State v. Lee, 331 So.2d 455 (La.1976); State v. Green, 335 So.2d 430 (La.1976). For this reason, once Mr. Knight testified about the incident, the trial court should have accepted these facts as true, at least for the purpose of deciding whether or not an overt act had been shown.
A trial judge's determination that the defendant has not laid a sufficient evidentiary foundation upon which to introduce testimony concerning the victim's dangerous character will not be disturbed absent a finding of clear error. State v. Burkhalter, 319 So.2d 392 (La.1975). In this case, the determination that an overt act had not been shown was clearly erroneous; therefore, all admissible evidence about the victim's dangerous character was improperly excluded after William Knight's testimony.
The statutory provision governing matters which are not grounds for reversal provides that a judgment or ruling shall not be reversed by an appellate court because of any error, defect or irregularity, or variance which does not affect substantial rights of the accused. C.Cr.P. art. 921. Therefore, the critical determination is whether or not the trial judge's erroneous ruling, which resulted in the exclusion of some of the testimony concerning the victim's character, affected a substantial right of the defendant.
The jurisprudence contains few cases concerning the effect of a failure to admit testimony about the victim's character when self-defense is argued as a defense. The majority of cases deal with testimony that is erroneously admitted rather than testimony which is improperly excluded; *428 however, in State v. Lee, 331 So.2d 455 (La.1975), this situation was discussed. In Lee, the defendant shot and killed the victim, Etchieson, after Lee's son and Etchieson's daughter had a fight while waiting for the Sunday School bus. Lee testified that when they came out of their houses to check on the children, the victim sprang at him with a knife shouting, "I'm going to cut off your head." The accused relied upon a defense of self-defense and said that he only shot the victim to protect himself. The defendant was permitted to describe his own difficulties with the decedent and to testify about a violent act he had seen him commit; but state objections were sustained to questions asked of him and another defense witness which prevented him from attempting to establish the decedent's dangerous and violent character. This Court reversed the conviction and held that the effect of the rulings was to deprive the defendant of the opportunity to establish the known dangerous character of the decedent by the testimony of other witnesses, since his testimony might be regarded as self serving in the absence of corroboration. This Court also noted that the accused had a statutory right to present such evidence and the substantial curtailment of this right could not be regarded as harmless.
Although Lee set forth the law that is applicable in this area, it is not dispositive of the case at bar. In Lee, the line of questions to which objections were sustained was clearly designed to elicit testimony from other witnesses concerning the victim's violent character and the exclusion of these questions left the defendant no opportunity whatsoever to corroborate his testimony concerning the victim's dangerous character. In this case, only two questions were improperly excluded concerning the victim's violent character; both were to William Knight, the brother of both the victim and the defendant.
The first question addressed to William Knight to which an objection was sustained was, "Did you ever know her [the victim] to carry a gun?" In Louisiana, character may be shown in support of a plea of self-defense by general reputation in the community or by prior threats against the defendant or specific acts that were known to the defendant at the time of the offense. State v. Lee, supra. Since this question did not seek to elicit testimony concerning the victim's general reputation or specific acts known to the defendant, the answer was properly excluded, even though the basis for the exclusion was incorrect.
The second question to which an objection was sustained arose when the defense questioned Knight concerning what the victim said to the people in the house after he made her leave because of the fight over which record to play. The question began, "Was she threatening to harm anyone in the ..." and the objection was made before the question was completed. This question was arguably admissible since it sought to elicit testimony concerning a prior threat made by the victim against the defendant. However, since the threat was directed at the entire family and not the defendant in particular, it was arguably properly excluded because it was not a threat against only the defendant. Regardless of whether or not the question should have been allowed as constituting a threat against the defendant, the exclusion did not affect the defendant's statutory right because this same question had been answered by William Knight earlier in his testimony in the following discussion:
"Q. Was she threatening the people in the house?
A. Yes, all of them.
Q. What was she threatening to do to them?
A. She dared us out of the house."
The defendant later gave the exact language of the threat in her testimony and she had the benefit of William Knight's corroboration since he testified that the victim was daring the family out of the house and the defendant's testimony was to the same effect.
The only other time a question was excluded, it was immediately rephrased and the desired information was obtained. This occurred when defense counsel questioned *429 the defendant concerning what the victim said as she advanced on the defendant. The court sustained an objection to the question, "Was she making any threats?", but allowed an answer to the counsel's next question, "When she was approaching you, what did she say?". The response to the second question was the exact language of the threat made by the victim against the defendant.
This case also differs significantly from Lee because in Lee, no witnesses other than the defendant were ever allowed to testify concerning the victim's violent nature, while in the instant case, the trial court allowed the defense to call a defense witness to testify about the victim's dangerous character. The court obviously felt that the proper foundation upon which to admit character testimony had been laid at some point after Mr. Knight's testimony because no objection to questions asked of the defense witness about the victim's character was ever sustained; therefore, the defendant had a full opportunity to develop testimony concerning the victim's violent and dangerous character.
For the reasons stated, we find that the rulings complained of did not affect a substantial right of the accused. Therefore, this assignment lacks merit.
The conviction is affirmed.
AFFIRMED.
DIXON, C. J., and LEMMON, J., dissent and assign reasons.
DIXON, Chief Justice, dissenting.
I respectfully dissent because I could find no evidence in the record that defendant did not shoot the victim in self-defense.
LEMMON, Justice, dissenting.
I disagree that defendant was not prejudiced by the erroneous exclusion of evidence of the victim's dangerous character.
After establishing a hostile demonstration by the victim, defense counsel asked two questions of William Knight, who was the brother of both the victim and the accused. The first question concerned the victim's habit of carrying a gun. A sustained objection prevented the defense from pursuing this line of questioning, not because the gun carrying was not shown to be an act known by the defendant,[1] but because there was no evidence of a hostile demonstration.
The second question concerned prior threats by the victim on the day of the offense. Stating "we are going to back up a little bit", defense counsel then asked "Was it your testimony that she [the victim] was threatening?" The prosecutor interrupted with an objection to such a question "without showing what I stated beforean overt act or a hostile demonstration". Thus thwarted, defense counsel asked no further question.
When the two questions are considered in context, it is unreasonable to conclude that the erroneous ruling (that the defense had not established a hostile demonstration) did not prejudice presentation of the defense of self defense, since knowledge of the victim's dangerous character was apparently critical to establishing the reasonableness of defendant's apprehension of danger.

ON REHEARING
LEMMON, Justice.
The crucial issue in this appeal involves the trial court's ruling that defendant had failed to establish an "overt act" or "hostile demonstration" and was therefore precluded by R.S. 15:482 from offering evidence of the victim's dangerous character or prior threats against the accused. On original hearing, this court held that the ruling, although erroneous, did not deprive defendant of a fair trial on her plea of self-defense.[1] On reconsideration, we reverse the conviction and remand for a new trial.
*430 The facts are essentially undisputed. Defendant and the victim were sisters. After an argument erupted during a family gathering at their mother's home, the victim was ejected from the party by her brother, because she was creating a disturbance and had threatened to harm various family members. About 10 or 20 minutes later, defendant went outside to meet the car that was coming to transport her home. The victim, holding her right arm behind her, approached defendant in a hostile and threatening manner, cursing defendant as she moved forward. Defendant beseeched her sister to stop and then fired a shot into the ground at her feet. When the victim continued to advance with menacing words and gestures, defendant shot her in the leg. At that point, the victim paused, but then, according to defendant's corroborated testimony, "broke toward" or "sprang at" the defendant, who was backed up against a car.[2] Defendant reacted by immediately firing a shot directly at her sister, killing her instantly. No weapon of any sort was discovered on or near the victim's body.[3]
Defendant was indicted for second degree murder. R.S. 14:30.1. A jury rejected her plea of self-defense and found her guilty as charged. She was sentenced to life imprisonment at hard labor.
There is no doubt that defendant, while acting with a specific intent to kill or inflict great bodily harm, shot her sister to death. Further, there is no doubt that defendant reasonably believed herself to be in imminent danger of some degree of physical assault. Based on these essentially uncontested facts, the jury was primarily called upon to decide whether defendant reasonably believed that she was in "imminent danger of losing (her) life or receiving great bodily harm and that the killing (was) necessary to save (herself) from that danger". The evidence would have supported a jury decision accepting or rejecting the plea of self-defense.[4] R.S. 14:20.
Thus, the determination of defendant's culpability focused on her state of mind, that is, the reasonableness of her apprehension of great bodily harm justifying the use of a pistol. Whether a reasonable fear of grave harm warranted defendant's use of deadly force was the crucial issue for the jury's determination. It is in that context that we must evaluate the impact of the trial court's erroneous ruling that defendant failed to show a "hostile demonstration" on the part of the victim, a ruling which precluded her from offering evidence of the victim's dangerous character and prior threats against the accused.
In State v. Green, 335 So.2d 430 (La. 1976), this court stated:
"Evidence of the victim's dangerous character or threats against the accused supports a plea of self-defense because it is relevant to show that the victim was the aggressor and because it is relevant to show that defendant's apprehension was reasonable." 335 So.2d at 433.
Here, there is no doubt that the victim was the aggressor.[5] As stated above, the *431 primary relevance of the evidence lay in its tendency to show that defendant acted from reasonable fear, rather than from anger or on the basis of an unfounded belief that her sister meant to inflict serious injury.
Upon reconsideration, we reject the view expressed on original hearing that defendant was not prejudiced by the trial court's clearly erroneous ruling. The only eyewitness, who was the brother of both the victim and the accused, was prevented from testifying as to the details and nature of the victim's threats directed toward defendant and of threats made by the victim toward others in defendant's presence, all of which allegedly occurred immediately prior to the killing.[6] It is inappropriate to speculate at this point as to the specific nature of the testimony which the brother would have given or as to its impact on the jury's critical assessment of the reasonableness of defendant's apprehension of serious harm.[7] Without a complete recitation of the evidence which would have been presented, it is impossible to conclude that the trial court's error was harmless beyond a reasonable doubt. C.Cr.P. Art. 921. See State v. Gibson, 391 So.2d 421 (La.1980).
Therefore, defendant's conviction and sentence are reversed, and the matter is remanded for a new trial.
DIXON, Chief Justice, dissenting.
I respectfully dissent from the remand to permit the state to make a better case. The uniform and consistent rule in this state is that the burden of proof is on the prosecution to prove beyond a reasonable doubt that the homicide was not committed in self-defense, when that issue is raised. I found no evidence that the killing was not in self-defense. The constitutional provision against double jeopardy is violated by remanding for a new trial.
NOTES
[*] Judges Wallace A. Edwards, Remy Chiasson and Elmo E. Lear of the First Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] If that reason had been stated as the basis for sustaining the prosecutor's objection, defense counsel would have had an opportunity to lay a foundation showing defendant's knowledge.
[1] The decision on original hearing thoroughly and carefully discussed R.S. 15:482, and concluded that the victim's conduct toward the defendant immediately prior to the killing presented the trial court with "appreciable evidence" of an overt act, from which defendant "could have reasonably believed that she was in imminent danger of death or great bodily harm". 419 So.2d at 427.
[2] As discussed on original hearing, testimony regarding this conduct by the victim constituted "appreciable evidence" of an "overt act" or "hostile demonstration".
[3] This was, of course, not dispositive of the issue of self defense, since it is the reasonableness of apprehension, and not the actuality of danger, which determines the question of self-defense under R.S. 14:20.
[4] Thus, we reject defendant's contention that she must be discharged because the evidence was insufficient for a rational juror to conclude beyond a reasonable doubt that she had not acted in self-defense. State v. Patterson, 295 So.2d 792 (La.1974).

The evidence would have also supported a jury's determination that defendant (even if not justified in killing under R.S. 14:20) acted under a "provocation sufficient to deprive an average person of his self-control and cool reflection" and was thus guilty only of manslaughter. R.S. 14:31.
[5] The state did not claim defendant was the aggressor and was therefore precluded from relying on self-defense. R.S. 14:21.
[6] Whether particular evidence was (or was not) properly admissible is not at issue here. The trial court's basis for exclusion was its erroneous ruling on the hostile demonstration. Thus, defendant was precluded from offering whatever properly admissible evidence could have been offered through the testimony of the witness.
[7] The burden of proof falls upon the state to prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Patterson, above.