808 So.2d 622 (2001)
STATE of Louisiana
v.
Barry Joseph BROWN.
No. 2000 KA 1951.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
*623 Mark D. Chiasson, Thibodaux, for Appellee.
Larry P. Boudreaux, Thibodaux, for Defendant/Appellant Barry J. Brown.
Before: WHIPPLE, KUHN and DOWNING, JJ.
WHIPPLE, Judge.
Defendant, Barry Joseph Brown, was charged by bill of information with aggravated battery, a violation of LSA-R.S. 14:34. After trial by jury, defendant was convicted as charged. Thereafter, defendant was charged, adjudged, and sentenced as a second felony habitual offender to imprisonment at hard labor for a term of twenty years. In this appeal, defendant urges five assignments of error.[1]
At the time of the instant offense, defendant and the victim had a romantic relationship and were living together with their two children, ages three and five years, in a mobile home in Thibodaux, Louisiana. The offense occurred at their home during the early predawn hours of October 9, 1998, when defendant physically attacked the victim, beating her with a piece of 2 × 4 wood and his fists, and kicking her.

ASSIGNMENTS OF ERROR NOS. 1 & 2
In these assignments, defendant contends that the evidence is insufficient to support his conviction for aggravated battery. He asserts that the evidence does not prove he used a dangerous weapon against the victim and that the evidence proves at most a simple battery. Alternatively, he submits that the evidence may support a conviction for second degree battery.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-1309 (La.1988). "Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." LSA-R.S. 14:33. "Aggravated battery is a battery committed with a dangerous weapon." LSA-R.S. 14:34. "`Dangerous weapon' includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." LSA-R.S. 14:2(3). However, aggravated battery requires neither the infliction of serious bodily *624 harm nor the intent to inflict serious injury. Instead, the requisite intent element is general criminal intent. See State v. Howard, 94-0023, p. 3 (La.6/3/94), 638 So.2d 216, 217 (per curiam). Criminal intent is addressed in LSA-R.S. 14:10(2), which provides as follows:
General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
In general intent crimes, the criminal intent necessary to sustain a conviction is shown by the very doing of the acts that have been declared criminal. State v. Payne, 540 So.2d 520, 523-524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La. 1989).
The victim testified she worked at Taco Bell on October 8, 1998. Because it was her job to close the restaurant that night, she got home from work the following morning at about 4:15 a.m. After she came home, defendant repeatedly asked her where she had been, and she continued to reply that she had been at work. Defendant left the living room where they were, went to the back of the house, and returned with a piece of 2 × 4 in his hand. Defendant stood near her, repeatedly asked where she had been, and told her not to lie. Although she consistently told him she had been at work, he struck her on the side of the head with the 2 × 4. She fell on the sofa, and he began hitting her with the 2 × 4 "more and more." She fell on the floor but got up. Defendant kept telling her he would kill her if he had a gun. However, he temporarily stopped the attack, and she went into the kitchen.
When the victim returned from the kitchen, defendant resumed beating her with the 2 × 4 and picked up a play phone that belonged to one of the children and started hitting her with it. She and defendant then went into the bathroom where defendant punched her in her face, kicked her, and continued to tell her he was going to kill her. Defendant walked over to a closet, came back, picked up the 2 × 4 and started swinging it "more and more."
When defendant left the room, the victim went to the back door to try to leave the house. Defendant came to her, knocked her to the floor, and started beating her again.
Thereafter, defendant walked out of the house. The victim tried to unlatch the back door to leave; but defendant approached from the outside, pushed her back inside the house, knocked her to the floor, and started punching and kicking her.
After defendant stopped hitting the victim, she got up and noticed defendant's sister and the sister's boyfriend standing on their porch next door. While punching a glass window to get their attention, the victim broke the glass and sustained a deep cut in her right arm. However, neither of these individuals came to her assistance.
After defendant left the house, the victim crawled to the bathroom. She tried to put cold water on her face but lacked the strength or ability to do so. Defendant's sister came inside the house, looked at the victim, and left. Thereafter, the victim lost consciousness. She could not recall any events until later in the morning, when she became aware that her mother, Shirley Jones, had arrived and was asking defendant what had happened.
Shirley Jones testified that she arrived at the house at about 7:30 a.m. on October *625 9. When she went inside, she saw that the victim was "beat [sic] up bad." Jones asked the victim what had happened. The victim told her defendant had beaten her. When Jones asked defendant why he had done it, defendant replied: "Something I heard made me mad."
Jones took the victim to the hospital, where she received treatment for her injuries, which included an orbital fracture of the left eye socket. Lafourche Parish Deputy Sheriff Mamie Pellegrin was notified by hospital personnel, went there, and spoke to the victim.
After the victim was released from the hospital, Pellegrin met with the victim at Shirley Jones' home at about 2:00 p.m. on October 9 and took pictures of the victim's injuries. At trial, the state introduced into evidence nine color photographs taken by Pellegrin depicting injuries the victim had received during the attack.
Pellegrin testified that the victim was very bruised and swollen. Pellegrin indicated that, although the photographs in 2 accurately depicted the injuries, they did not "really show how swollen [the victim] was." Pellegrin described the victim's injuries as: a cut on the ankle, and bruises and injuries to her back, left and right calves, left thigh, left arm, and left buttocks. Pellegrin testified that the victim's left eye was swollen shut and that the victim had "several lumps" on the crown of her head.
Using State Exhibit S-1, a replica of the 2 × 4, to strike a book, the victim demonstrated in court the force defendant used in striking her with the 2 × 4 during the attack. Concerning defendant's use of the 2 × 4 against her, the victim stated that defendant hit her with it on her leg, thigh, arm, and back. She also stated that while she was sitting on the floor, defendant held it with both his hands and hit her with it on top of her head.
At trial, in addition to evidence pertaining to the instant offense, the state presented evidence of other acts of violence defendant had previously perpetrated against the victim, which was presented to show defendant's knowledge, intent, system and motive.[2] In her testimony, the victim related these other acts of violence as follows.
On February 21, 1995, the victim and defendant argued when defendant wanted her to go to his brother's home. She refused but defendant started dragging her there. After they arrived, defendant inflicted a battery upon her. There was also an incident when defendant began beating the victim with a broom, which resulted in her sustaining bruises on her arm and hand from her attempts to ward off the blows. Later, during another incident, defendant used a broomstick to beat her about her head. Additionally, during an incident at the home of defendant's brother, defendant grabbed the victim by her head, punched her, and grabbed her neck as he choked her. In yet another incident, defendant came home, argued with the victim, and struck her. The victim ran to the home of defendant's sister. Defendant followed the victim, approached her from the rear, knocked her to the ground, and started stomping her in the face with his foot. During this incident, the victim sustained a broken jaw.
At trial, defendant took the witness stand in his own defense. He admitted he was mad, upset, and lost his temper when *626 the victim came home on October 9. Although she claimed she had been at work, he did not believe her and thought she was being unfaithful to him, as he had phoned her workplace and had been told she was not there. He admitted he hit the victim two or three times with his fist in her shoulder area, but he denied hitting her with a piece of 2 × 4 wood or any kind of stick. He claimed that, when the victim's mother came by the following morning, he had already left the house.
Defendant also admitted that he had previously struck the victim and that he had entered pleas of guilty to battery on her, i.e., one in 1995 and another in 1996. However, he denied he ever hit her with a stick and indicated he did not recall ever kicking her in the mouth.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Gordon, 582 So.2d 285, 292 (La.App. 1st Cir.1991). In finding defendant guilty of the instant crime, it is obvious that the jury believed the testimony of the State's witnesses and rejected defendant's testimony. The credibility of the witnesses' testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact not subject to appellate review. State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
Viewing all of the evidence in the light most favorable to the state, any rational trier of fact could have concluded beyond a reasonable doubt that defendant's conduct in striking the victim with a piece of 2 × 4 wood was the intentional use of force or violence upon the person of another with an instrumentality which in the manner used was calculated or likely to produce death or great bodily harm. Accordingly, there was constitutionally sufficient evidence to support the instant conviction.
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 3
In this assignment, defendant contends that the trial court erred by allowing the state to introduce into evidence at trial State Exhibit S-1, a piece of 2 × 4 wood similar to the type used against the victim, without establishing a proper basis for its admission.
As expressed in State v. Manieri, 378 So.2d 931, 933 (La.1979):
It is error to introduce into evidence weapons which are allegedly "similar" to the ones used in the murder. The jurors naturally tend to infer a connection between the weapon and the murder simply from a mere viewing of the material object, although such a connection is not proved. The viewing tends without proof prejudicially to associate the accused with the deadly weapon. Because the potential for prejudicial effect may outweigh any probative value such evidence may possess, it is our view that a trial judge flirts with prejudicial error when he permits such evidence to be introduced.
During the victim's direct examination, the prosecutor showed her S-1, which she testified looked like the piece of wood defendant had used to hit her. When the prosecutor offered S-1 into evidence, the defense objected to its admission on grounds it had not been shown to be the object allegedly used against the victim but was only a replica of the object. The prosecutor asserted that S-1 was relevant and admissible, as it would assist any juror who did not know what a 2 × 4 looked like in determining whether or not a 2 × 4 could be a dangerous weapon. After overruling the objection and allowing S-1 into *627 evidence, the court specifically instructed the jury that S-1 was not the 2 × 4 allegedly used in the instant case but was only a similar one.
Because the State failed to prove S-1 was more probable than not the 2 × 4 connected to the instant case, the trial court erred in admitting S-1 into evidence.[3]See State v. Manieri, 378 So.2d at 933 (La.1979); State v. Mills, 505 So.2d 933, 947 (La.App. 2nd Cir.), writ denied, 508 So.2d 65 (La.1987). However, the error was harmless, since the guilty verdict was surely unattributable to the error in allowing the 2 × 4 to be introduced into evidence where: (1) the trial court instructed the jury that S-1 was not the 2 × 4 allegedly used in the commission of the instant offense; (2) the evidence established that the particular 2 × 4 used in the commission of the instant offense was never recovered and, thus, no attempt was made to link the defendant herein with this particular demonstrative aid; and (3) the other evidence introduced, including the testimony of the victim and her mother, overwhelmingly established the elements of the offense.
Thus, this assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 4 & 5
In assignment number four, defendant argues that the original ten-year term of imprisonment at hard labor was excessive. In assignment number five, defendant contends that: (1) if this Court determines the evidence is insufficient to support his conviction for aggravated battery but sufficient to support his conviction for the lesser included responsive offense of simple battery, then his second felony habitual offender adjudication and sentence must be vacated and the case must be remanded for resentencing, or (2) if this Court determines the evidence is insufficient to support his conviction for aggravated battery but sufficient to support his conviction for the lesser included responsive offense of second degree battery, then his second felony habitual offender adjudication stands, but the habitual offender sentence must be vacated and the case must be remanded for resentencing.
The contention raised in assignment four is moot and, thus, meritless, because the trial court vacated the original ten-year term before resentencing defendant as an habitual offender. Regarding assignment five, because we found no merit to defendant's assignments one and two challenging the sufficiency of the evidence, his contentions in assignment five (which hinge on the challenge to the sufficiency of the evidence) likewise are meritless.
AFFIRMED.
DOWNING, J., dissents and assigns reasons.
DOWNING, Judge, Dissenting.
In State v. Davis, 336 So.2d 805 (La. 1976), the Supreme Court established a rule that using a weapon "similar" to the weapon used in the crime as "demonstrative" evidence is error because of the "inherent *628 possibility of prejudice and in order to assure that an accused is convicted only on the basis of legally admissible evidence." The Supreme Court excused reversal because there had been no definitive guide prior to the Davis case and because "no effort was made to exploit the viewing, such as by demonstrative use or in argument." State v. Davis, pp. 809, 810.
In cases since Davis, courts have quoted State v. Manieri, 378 So.2d 931 (La.1979), "a trial judge flirts with prejudicial error when he permits such evidence to be introduced." Despite these statements, prosecutors continue to violate the rule expressed in Davis. In this case the 2 × 4 was used "demonstratively," which was specifically prohibited in Davis and Davis has been the law since 1976 so there is no excuse that there has not been a definitive guide. Clearly, the demonstrative use of the 2 × 4 in this case is prejudicial error under the Davis criteria. We should not have the "no similar weapons rule" if the courts do not enforce it. If you threaten your children with punishment which never comes, they lose respect for you. If courts state that prosecutors "flirt with reversal" but reversal never comes, then prosecutors lose respect for the law. Either we should eliminate the rule and state that demonstrative evidence is admissible but that judges should weigh the prejudicial effect versus the probative value, as in civil cases, or we should enforce compliance with the "no similar weapons" rule, because of the "inherent possibility of prejudice." We lose our moral authority to require criminals to follow the rule of law, if we do not follow the rule of law.
NOTES
[1] See State v. Brown, No. 2000 KA 1952, 798 So.2d 333, also decided this date, in which we affirmed defendant's habitual felony offender adjudication and sentence.
[2] Prior to trial, the state furnished the defense with written notice of intent to introduce evidence of these other acts of violence or crimes and the purposes for which admission of this evidence was being sought. Thereafter, at trial prior to opening statements, the trial court ruled the evidence was admissible.
[3] We note that under the approach taken by other courts that have considered the issue, there would have been no error if S-1, rather than being admitted into evidence, had merely been shown to any of the witnesses and/or the jury for demonstrative purposes. See, e.g., State v. Duncan, 99-0778, pp. 12-14 (La.App. 4th Cir.4/19/00), 761 So.2d 586, 592-594 (State allowed to use bat as demonstrative aid during closing argument to show type of weapon probably used on victim where State did not attempt to link bat to crime); State v. Hawkins, 97-726, p. 4 (La.App. 3d Cir.10/29/97), 702 So.2d 1121, 1124, writ denied, 97-2976 (La.4/3/98), 717 So.2d 230 (State showed witnesses pistol for demonstrative purposes only to show fire arm resembled gun possessed by defendant).