378 So.2d 931 (1979)
STATE of Louisiana
v.
Kevin MANIERI and Sheldon Manieri.
No. 64742.
Supreme Court of Louisiana.
December 13, 1979.
Rehearing Denied January 28, 1980.
A. J. Boudreaux, Staff Appeals Atty., 24th Judicial Dist. Indigent Defender Bd., Metairie, for defendant-appellants.
*932 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Jacob J. Amato, Jr., Abbott J. Reeves, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
BLANCHE, Justice.[*]
On October 14, 1977, defendants, Kevin and Sheldon Manieri, were indicted for first degree murder in violation of R.S. 14:30. The defendants plead not guilty and were tried by a jury of twelve persons. The jury returned a unanimous verdict of guilty as charged against both defendants. Pursuant to a sentencing hearing mandated by C.Cr.P. art. 905, et seq., the jury recommended that the defendants be sentenced to life imprisonment without the benefit of probation, parole or suspension of sentence.
On appeal, the defense urged 33 assignments of error, all of which have been argued in counsel's brief. We address in this opinion only assignments of error numbers 4, 5, 6, 8, 10, 20, 21, 27, 29, 30, 31, 32 and 33, which deal with admission into evidence of certain physical evidence, as meriting discussion. For the benefit of the parties, we attach hereto an appendix containing a discussion of the remaining assignments of error which we designate as "Not for Publication".
The state adduced the following facts: On September 29, 1977, the defendants and one Tim Mosely went to the residence of Cheryl Black for the purpose of purchasing some marijuana. The eleven year old victim, Chris Black, admitted the defendants into his house where they learned that the victim's mother was at work. Kevin Manieri, having smoked marijuana at the house on a previous occasion, telephoned the victim's mother to inquire about a purchase, but the phone call ended with a request by Cheryl Black that they leave the house as she did not want them there. As requested, they left the house and went to a neighborhood park where Timothy Mosely overheard the defendants discussing "something about killing something or someone". Tim Mosely testified that the three returned to the Black residence, where they were again admitted by the victim, on the pretense of needing to use the bathroom. Tim further testified that after gaining entrance, Kevin Manieri came out of the bathroom with a rubber hose which he used to strangle Chris Black. Kevin then stabbed the victim repeatedly and cut his throat, although the evidence showed that the throat wound was superficial. While Kevin Manieri was killing young Chris Black, the other boys ransacked the house in search of marijuana. In order to appear as though a robbery had occurred, Kevin Manieri broke the back door upon leaving the house.
The state admitted into evidence over defense counsel's objection blood-stained clothing of Kevin Manieri, three knives, six photographs of the victim at the scene of the crime, and two autopsy photographs of the victim. Defense counsel contends the trial court erred in admitting these items into evidence because their prejudicial effect outweighed any probative value which they may have had.
The state produced a T-shirt, black pants and work boots that Kevin Manieri admittedly wore on the day of the murder. An expert criminologist, Linda Reel, testified she found traces of blood on each of these articles of clothing, but was unable to type the blood or even to determine if it was animal or human blood. She also stated that the bloodstains on the T-shirt were old stains, thus indicating that Kevin or someone else got blood on the clothes on two separate occasions.
In considering whether demonstrative evidence is admissible over an objection that it is unduly inflammatory, the test to be applied is whether the proffered evidence is relevant to any material issue in dispute, and if so, whether its probative value exceeds its probable prejudicial effect. State v. Hawthorne, 345 So.2d 1170 *933 (La.1977). The fact that the clothes which Kevin admitted he wore on the day of the murder had blood stains on them does tend to inferentially support the state's argument that Kevin stabbed the victim to death. We believe the blood-stained clothing was highly relevant to the issue of Kevin Manieri's guilt and was properly admitted. The criminologist's inability to determine the blood type and species and her testimony that the stains on the T-shirt were "old" should go to the weight to be given the evidence. State v. Miles, 339 So.2d 735 (La.1976).
The state also introduced into evidence over defense counsel's objection three knives, one of which was found in the kitchen drawer of the victim's residence. None of the knives had bloodstains on them, and a state witness testified that none of the knives was the murder weapon.
It is error to introduce into evidence weapons which are allegedly "similar" to the ones used in the murder. The jurors naturally tend to infer a connection between the weapon and the murder simply from a mere viewing of the material object, although such a connection is not proved. The viewing tends without proof prejudicially to associate the accused with the deadly weapon. Because the potential for prejudicial effect may outweigh any probative value such evidence may possess, it is our view that a trial judge flirts with prejudicial error when he permits such evidence to be introduced. We believe, however, that reversible error did not here occur under the limited facts presented. The jury heard a state witness testify that the knives were not the murder weapon. No effort whatsoever was made to connect the knives with the accused or the crime. Thus, little possibility existed that the jurors, without proof, would prejudicially associate the defendants with the knives. State v. Davis, 336 So.2d 805 (La.1976). Accordingly, we hold that although the trial judge erred in admitting the knives, no prejudice resulted to the accused's right to a fair trial thereby, and the assignment of error is without merit.
Defense counsel contends the trial judge also erred when he admitted into evidence certain photographs of the victim. The state introduced six black and white photographs, taken at the scene of the crime. Defense counsel offered to stipulate as to what the photographs would show rather than have them admitted. On the next day of trial, the state introduced two black and white autopsy photographs. Defense counsel again offered to stipulate as to what those photographs would show.
Photographs of the body of a victim depicting fatal wounds are generally relevant to prove the corpus delicti, to corroborate other evidence of manner in which death occurred, to establish the location, severity and number of the wounds, and to establish the identity of the victim. State v. Cooper, 334 So.2d 211 (La.1976). However, the danger of abuse where photographs are exhibited to the jury warrants some qualification of this rule. The sight of cruel injuries tends to overwhelm reason and to associate the accused with the atrocity without sufficient evidence. 4 Wigmore, Evidence, § 1157 (Chadbourn, rev. ed., 1972). State v. Gilmore, 332 So.2d 789 (La. 1976). The test of admissibility of a so-called "gruesome" photograph is whether its probative value outweighs its probable inflammatory effect. State v. Smith, 327 So.2d 355 (La.1976). State v. Gilmore, supra. In weighing the relative probative value of proffered evidence against its probable prejudicial effect, whether the evidence is merely cumulative is a factor to be considered. State v. Redwine, 337 So.2d 1041 (La.1976); State v. Hawthorne, supra. In addition, where the state's proof has been rendered unnecessary by defendant's judicial admission, the prejudicial nature of the evidence assumes added significance and correspondingly reduces the state's legitimate interest in its admission. State v. Gilmore, supra.
The photographs of the victim at the scene of the crime were probative to the material issues of the identity of the victim, the corpus delicti and the cause of death. State v. Cooper, supra. As to the autopsy photographs, the state had already established *934 the corpus delicti and the identity of the victim through the introduction of the six photographs of Chris Black's body at the scene of the crime. The state contends the autopsy photographs were necessary to show the nature of the wounds, since the six photographs introduced on the day before did not show the knife wounds. Although the autopsy photographs were relevant to that issue, the coroner had already testified in detail as to the nature, location, number and severity of the wounds, and one of the six photographs introduced the day before was a close-up of the victim which showed some of the knife cuts in the victim's T-shirt. The autopsy photographs could only be cumulative evidence. In addition, the defense offered to stipulate as to what the photographs would show, further diminishing the state's interest in their admission.
Even given the diminished probative value of the autopsy photographs because they were not, in our opinion, "gruesome", we do not find that their probative value or the probative value of the photographs at the murder scene was outweighed by prejudicial effect. Although unpleasant, their principal unpleasantness was due to the subject matter, being that of a young boy. They are all in black and white and are photographs taken at the Black residence depicting the victim lying on the kitchen floor. The knife wounds on the body cannot be seen except in one close-up, which shows the cut on the victim's throat. The autopsy photographs depict the upper half of the victim's unclothed body where the stab wounds proved fatal. Because we do not believe the photographs were inflammatory, we find the trial judge did not abuse his discretion in admitting them. Accordingly, we find no error in the assignment.
The convictions and sentences of defendants are affirmed.
AFFIRMED.
NOTES
[*] Honorable JESSE N. STONE, Jr. served as Justice Ad Hoc in the vacancy created by the resignation of TATE, J.