JUDE G. GRAVOIS, Judge.
li>The defendant, Cedric Lewis, has appealed his conviction of second degree murder. For the reasons that follow, we affirm defendant’s conviction and sentence.

*1214
FACTS

On the evening of July 3, 2005, Trellas Porter was shot and killed on the inside of his home in Harvey, Jefferson Parish, Louisiana. Defendant and his co-defendant, Renard Scott, were tried together for this murder. This appeal involves only defendant.
At trial, Ms. Alicia Porter, the mother of the victim, testified that on the evening of July 3, 2005, she was in her bedroom watching television when she heard her mother, Ms. Dorothy Eugene, screaming. Ms. Porter came out of her bedroom to see an intruder in her house, whom she described as a black male with shoulder-length dreadlocks, covering his face with a white T-shirt. Ms. Porter explained that she only saw this person for a second, then backed out of the room |sto call the police. While doing so, she heard two gunshots. After she got off the phone with the police, Ms. Porter entered her son’s bedroom to find him lying on the floor with his eyes covered with blood. Although not mentioned in her statement to the police, Ms. Porter testified at trial that she heard her son say the name “Cedric” before he was killed. Ms. Porter’s statement to the police was admitted into evidence.
Ms. Dorothy Eugene, the victim’s grandmother, testified that on the day in question, she was watching television in her den when she heard the front door open followed by hollering. She ran to the living room where she saw two intruders, one with a gun. She could not see the intruders’ faces because they were concealed with some type of cloth; from their hands, however, she could tell that they were black males. The gunman had dreadlocks. The gunman pointed the gun at the victim who was seated on the sofa. Although the intruders and the victim were talking, Ms. Eugene could not understand what they were saying until she heard the victim say, “Cedric, you don’t have to do this.” The victim then stood up from the sofa and proceeded to his bedroom with the gunman and his accomplice. The gunman tripped and fell over a toy box. She grabbed the gunman by the neck, scratched him, and pulled his hair. The gunman then pointed the gun in her face. She called her daughter, Ms. Porter, for help, then ran out of the front door yelling for help. While outside, she heard two gunshots. Ms. Eugene’s statement to the police, as well as her deposition taken for perpetuation purposes, were admitted into evidence.
Christopher Lindsey was questioned by the police in connection with this murder. After Mr. Lindsey asserted his Fifth Amendment right to remain silent at the trial, his statement to the police was introduced into evidence. In his statement, Mr. Lindsey stated that on the night of the murder, he accompanied defendant to |4the victim’s residence to buy marijuana. He stood near the front door, entering no further than the front room. When he heard gunshots, he ran from the house. He heard the victim say something along the lines of “Cedric, don’t do this to me.”
A droplet of blood was discovered on the living room floor of the victim’s home. A swab of this blood was obtained for DNA analysis. Bonnie Dubourg, an expert in forensic DNA analysis, testified that this swab of blood contained DNA consistent with defendant’s DNA. She explained that the DNA profile found in this blood droplet occurs with a frequency of approximately one in greater than a hundred billion persons of Caucasian, African-American, and Hispanic populations.

ASSIGNMENT OF ERROR NUMBER

*1215 THREE[1]

The evidence was insufficient to support the verdict of guilty of second degree murder.

In this assignment of error, defendant argues that the inconsistent testimony of eyewitnesses identifying defendant as the gunman rendered the evidence insufficient. In response, the State acknowledges the inconsistent testimony, but argues that the DNA evidence linking defendant to the scene, along with the statement of Christopher Lindsey which placed him at the scene, was sufficient to support the conviction.
In reviewing sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a | ¡¡reasonable doubt. State v. Mickel, 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885 (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert, denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002)). In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. State v. Williams, 08-272, p. 4 (La.App. 5 Cir. 12/16/08), 3 So.3d 526, 529, writ denied, 09-0143 (La.10/16/09), 19 So.3d 470 (citation omitted). When the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id. Further, positive identification by only one witness is sufficient to support a conviction. Id.
A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id., 08-20 at 7, 985 So.2d at 240.
In his brief to this Court, defendant only contests sufficiency of the evidence on the issue of identity.[2] Accordingly, we will address only that issue.
*1216 In State v. Wiley, 10-811, p. 13 (La.App. 5 Cir. 4/26/11), 68 So.3d 583, 591, this Court found the evidence was sufficient to convict the defendant as a principal to second degree murder when the most important piece of evidence was a piece of 1 fichewing gum which contained the defendant’s fingerprints and DNA. The conviction stemmed from a shooting which occurred during a burglary perpetrated by several individuals. Id., 10-811 at 2-3, 68 So.3d at 585-86. This Court found that the State did not prove that the defendant fired the gun that killed the victim, but did find that the State proved beyond a reasonable doubt that the defendant was a principal to second degree murder. Id., 10-811 at 14, 68 So.3d at 591. In reaching this conclusion, this Court relied on the fact that the defendant’s fingerprint and DNA were found at the scene of the crime. Id.[3]
In the instant case, Christopher Lindsey identified defendant as the gunman in his statement and in photographic lineups. Mr. Lindsey stated that he accompanied defendant to the victim’s residence on the night of the murder. The victim’s grandmother, mother, and Mr. Lindsey all stated that they heard the victim say the name “Cedric” before he was killed. Defendant’s DNA matched a droplet of blood that was found at the murder scene. Detective Donald Meunier, the lead investigator on this case, testified that the results of the DNA testing on the droplet of blood confirmed that defendant was at the murder scene. Detective Meunier further testified that he believed that there were three people involved in the murder, two of whom went into the house.
Unlike in Wiley, where this Court found that the State had proven the defendant was a principal to second degree murder based in large part only on DNA evidence, in the instant case, defendant’s conviction was supported not only by DNA evidence, but also by the statement of Mr. Lindsey, who accompanied defendant to the scene, and by the testimony of the victim’s mother and grandmother that they heard the victim call defendant by name before the shooting. 17A positive identification by only one witness is sufficient to support a conviction. Williams, 08-272 at 4, 3 So.3d at 529. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Caffrey, 08-717, p. 5 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297 (citation omitted). Further, it is well-settled that the trier of fact can accept or reject, in whole or in part, the testimony of any witness. Caffrey, 08-717 at 5, 15 So.3d at 202 (citation omitted). It is not the appellate court’s function to re-evaluate the credibility of witnesses or to reweigh the evidence. Id., 08-717 at 4, 15 So.3d at 202. Therefore, despite the inconsistent testimony as to whether one or two perpetrators were involved in the murder, the jury heard testimony from all the witnesses, reviewed all the evidence, and concluded that defendant participated in the murder of Trellas Porter.
Viewing the evidence in a light most favorable to the State, the evidence was sufficient to convince a rational trier of fact that defendant was guilty of second degree murder.
*1217 This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER ONE

It was error to deny the motion to sever the co-defendant for trial.

In this assignment of error, defendant argues that a severance should have been granted because statements made by Karra Crayton, which defendant sought to have admitted, were not admitted due to the objection of his co-defendant, Renard Scott. Conversely, the State contends that defendant waived any motion to sever by proceeding to trial without raising the issue that the trial court had not ruled on the alleged motion to sever. The State also argues that a severance should |snot have been granted because defendant failed to show how he was prejudiced by the exclusion of Ms. Crayton’s statements and the lack of a severance.
It is well established that motions pending at the commencement of trial are waived when the defendant proceeds to trial without raising as an issue, the fact that there was no ruling on the motions. State v. Holmes, 06-2988, p. 80 (La.12/2/08), 5 So.3d 42, 94, cert. denied, - U.S. -, 130 S.Ct. 70, 175 L.Ed.2d 233 (2009) (citations omitted).
Our review of the record indicates that no explicit motion to sever was made in the trial court. On the second day of trial, defendant’s attorney sought to introduce statements of Ms. Crayton due to her unavailability, but co-defendant’s attorney opposed their introduction. Then defendant’s attorney stated: “And the only way I could see to resolve that quandary, is to split the cases and allow us to go to trial first, Mr. Lewis, and have us go to trial first.” The court did not rule on this alleged motion to sever, but did rule that Ms. Crayton’s statements were inadmissible hearsay. In addition to the lack of a ruling on the alleged motion to sever, there was also no objection to the lack of a ruling. Accordingly, pursuant to Holmes, any alleged error related to the alleged motion to sever was waived.
Moreover, we find that defendant is not entitled to relief even if the motion to sever was not waived.
LSA-C.Cr.P. art. 704 provides:
Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
Whether justice requires a severance must be determined by the facts of each case. State v. Coe, 09-1012, p. 13 (La.App. 5 Cir. 5/11/10), 40 So.3d 293, 301, writ denied, 10-1245 (La.12/17/10), 51 So.3d 17 (citations omitted). A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. Id. A denial of a motion to sever will not be overturned absent a clear abuse of discretion. Id.
A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the State. Coe, 09-1012 at 13, 40 So.3d at 301. The defendant bears the burden of proof in a motion to sever. Id. The mere unsupported allegation that defenses will be antagonistic is not sufficient to require a severance. Id., 09-1012 at 13, 40 So.3d at 301-02. For defendants to be entitled to separate trials, prejudice must be shown. State v. Jackson, 03-883, p. 16 (La.App. 5 Cir. 4/27/04), *1218 880 So.2d 841, 852, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118.
At trial in the present case, the only reference to conflicting interests between defendant and his co-defendant was made by defendant’s attorney when he stated that he wanted Ms. Crayton’s statements to come into evidence, while his co-defendant did not. Similar to Jackson, neither defendant blamed the other. The mere allegation of conflicting interests between co-defendants regarding the introduction of a witness’s statements, without the defendants blaming the other, does not constitute mutually antagonistic defenses requiring severance.
Moreover, defendant has not shown how he was prejudiced by the lack of a severance. He contends that he was prejudiced because he was precluded from having Ms. Crayton’s statements introduced into evidence. There were three statements of Ms. Crayton that defendant sought to have introduced and his cojde-fendant10 opposed.[4] In the first statement, Ms. Crayton indicated that she heard the victim repeatedly address the gunman as “Sedric” [sic]. In the second statement, Ms. Crayton identified defendant from a photographic lineup as the gunman. And in the third statement, Ms. Crayton reiterated that defendant was the gunman. Thus, the exclusion of these incriminating statements did not prejudice defendant. To the contrary, the exclusion of these statements seems to have been to defendant’s advantage. Thus, defendant has failed to show how he was prejudiced by the failure to grant his alleged motion for severance based on the exclusion of Ms. Crayton’s statements.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

It was error to permit the State to introduce the Tangiólo [sic] gun evidence under the guise of impeachment as the prejudicial effect of the evidence greatly outweighed its minimal-if any-impeaching effort.
In this assignment of error, defendant argues that a Tanfoglio gun box recovered from his residence, which was admitted for impeachment purposes, was admitted erroneously because it was irrelevant. Defendant asserts that the evidence was more prejudicial than probative. In response, the State contends that because this evidence was used for impeachment purposes, it was more probative than prejudicial. In any event, the State claims that even if this evidence was erroneously admitted, the error was harmless since the jury was aware that the murder weapon was not a Tanfoglio gun.
Pursuant to a search warrant obtained for defendant’s residence, a Tanfoglio .45 caliber green gun box was seized. When the State sought to introduce the gun box at trial, the defense objected and the following discussion took place:
J^MR. NOLTING:
Okay, Your Honor, I believe the State is about to introduce what is marked, at this point, State’s exhibit 30, which is a—it’s actually a gun case, a Tanfoglio is the name of it, and it’s for a .45 caliber weapon, a handgun, and I think it has a serial number, and it’s an EA .45 Poly, okay? This gun was taken from the home of Cedric’s mother, who owns the house, okay? Now, Cedric was living there, this is a gun that she purchased from a Hock Shop, and right now I’m trying to get her to make sure to see if *1219 we can get the records, because that Hock Shop placed has been closed, she’s trying to — we’re trying to find the guy that had it.
At any rate, the police also recovered the gun itself, when they arrested his brother, I guess in that same area, for some other reason. Okay?
And that gun has been checked out by ballistics, Ms. Walzer checked it out, and it had nothing to do with this case, absolutely nothing.
The mother can come in and testify that that is her weapon, that she had it legally, and that it was nothing— this gun did not in any way touch this case. They’ve already testified that they’ve got the murder weapon, they put it in front of this jury.
That’s not enough, they couldn’t really put it in Cedric’s hands, now they want to imply that, well, he’s around a .45, he said he never had one, and they want to just shove this in here for something that has no materialistic value in this case, as far as who actually had that gun and shot the victim.
What they want to do is put something in that’s highly prejudicial, that has nothing to do with the case, and I think that it should be disallowed.
MR. KINNETT:
I think what he’s trying to say, that that box is—
MR. NOLTING:
It’s irrelevant and immaterial.
MR. KINNETT:
—more prejudicial than probative.
MR. NOLTING:
That’s correct.
MR. KINNETT:
1 ii»The defendant gave a statement to the police that he had never had a gun, never been around a gun, and a gun box is found in his house, his room.
MR. NOLTING:
The gun was not found at his house, it was supposedly found in the possession of his brother.
MR. KINNETT:
The box, I’m not speaking—
MR. NOLTING:
Outside the house—
[[Image here]]
MR. KINNETT:
So, this indicates that he’s being deceitful with the police officer, in his statement, and that’s the purpose of its introduction.
Mr. Nolting is right, we’ve already indicated that we had the murder weapon, where the murder weapon was found, we went through that extensively, we went through the ballistics at length, and I think the jury will understand that we’re not alleging that the gun that belongs in that box is the murder weapon.
THE COURT:
I understand. I’m going to deny your motion.
MR. NOLTING:
Note my objection.
Relevant evidence is evidence which tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. art. 401. Although relevant, evidence may nonetheless be excluded if the probative value is substantially outweighed by its prejudicial effect. LSA-C.E. art. 403.
A trial judge, in deciding-the issue of relevancy, must determine whether the evidence bears a rational connection to the *1220 facts at issue in the case. State v. Jacobs, 07-887, p. 62 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 580. Absent a clear 113abuse of discretion, the trial judge’s determinations concerning relevancy and admissibility of evidence should not be overturned. Id., 07-887 at 63, 67 So.3d at 580.
In State v. Manieri, 378 So.2d 931 (La.1979), the defendants were found guilty of murdering an 11-year-old boy by stabbing and strangulation. Three knives were among the items admitted as evidence at trial. Id. at 933. None of the knives had blood stains on them, and a State’s witness testified that none of the knives was the murder weapon. Id. The Supreme Court held that the trial court erred in admitting the knives, but that it was not reversible error, noting that no effort was made during the trial to connect the knives with the crime, thus little possibility existed that the jurors would prejudicially associate the defendants with the knives. Id.
In State v. Burbank, 01-0831, p. 14 (La.App. 4 Cir. 2/27/02), 811 So.2d 1112, 1121, writ granted in part, judgment rev’d in part, 02-1407 (La.4/23/04), 872 So.2d 1049, the Fourth Circuit found that a firearm recovered from the defendant’s home pursuant to a search warrant was relevant evidence, and thus admissible at the defendant’s trial for first degree murder, although the firearm was not the murder weapon. The court reasoned that the weapon was relevant and admissible because it was introduced as part of all the evidence recovered during the execution of the search warrant at the defendant’s residence, the weapon provided evidence that the defendant was familiar with and used guns, and the weapon impeached the testimony of the defendant’s mother that she had never seen defendant with a weapon. Id., 01-0831 at 14-15, 811 So.2d at 1121-22.
The instant case shares similar facts as those in Burbank. Just as in Burbank, the gun box was recovered during the execution of a search warrant at defendant’s residence, it tended to indicate that defendant was familiar with guns, | uand it tended to impeach defendant’s statement that he had never carried or possessed a gun. In his first statement to the police, defendant denied participation in and knowledge of the murder and disclaimed carrying or possessing a gun. Therefore, the gun box was relevant to attack defendant’s credibility.
Further, no effort was made during the trial to connect the Tanfoglio weapon with the murder. In fact, Detective Meunier’s testimony made the jury explicitly aware that the Tanfoglio firearm was not the murder weapon. Thus, there was little possibility that the jury was confused or mislead by the admission of the gun box into evidence.
Having found the gun box relevant and more probative than prejudicial, the trial court did not abuse its discretion in allowing the gun box into evidence.
Further, any error in the admission of evidence is subject to a harmless error analysis. State v. Hotard, 07-498, p. 7 (La.App. 5 Cir. 12/27/07), 975 So.2d 16, 20. The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. Id.
In this case, Mr. Lindsey identified defendant as the gunman in his statement to the police and from photographic lineups. Mr. Lindsey stated that he accompanied defendant to the victim’s residence on the night of the murder. The victim’s grandmother, mother, and Mr. Lindsey all stated that they heard the victim say the name “Cedric” before he was killed. Additionally, a droplet of blood containing defendant’s DNA was discover *1221 ed on the living room floor of the victim’s home. Given this overwhelming evidence, the guilty verdict in this case was surely unattributable to the introduction of the gun box, especially considering that the jury was made aware that the Tanfoglio firearm was not the murder weapon. Thus, even if admission of the gun box was error, it was harmless.
This assignment of error is without merit.
| ^ERRORS patent review
The record was reviewed for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record reveals that the trial judge did not observe the mandatory 24-hour delay between the denial of defendant’s motion for a new trial and sentencing, as required by LSA-C.Cr.P. art. 873. The trial judge denied defendant’s motion for a new trial on September 16, 2011, and imposed sentence on defendant that same day.
In State v. White, 404 So.2d 1202 (La.1981), the Louisiana Supreme Court stated:
Although LSA-C.Cr.P. art. 873 unequivocally requires the trial court to delay imposition of sentence for a period of at least 24 hours after denial of post-trial motions, there has been no objection raised regarding the sentence imposed in this case and no showing or suggestion that defendant was prejudiced by the failure to observe the delay. Judicial efficiency therefore dictates that this court need not follow the useless formality of remanding for reimposition of a sentence which has not been challenged.
White, 404 So.2d at 1204 (citation omitted).
Citing White, supra, this Court has found that when a defendant does not waive the 24-hour delay afforded by LSA-C.Cr.P. art. 873, and does not challenge the penalty imposed, the error may be harmless. State v. Jones, 07-271, pp. 10-11 (La.App. 5 Cir. 10/30/07), 970 So.2d 1143,1149-50.
Although defendant in this case did not waive the delay for sentencing, he did not object to the sentence in the trial court, nor raise any issue regarding his sentence on appeal. Accordingly, we find that no corrective action is necessary concerning this issue.
| ^CONCLUSION
For the foregoing reasons, defendant’s conviction and sentence are affirmed.

AFFIRMED

. When the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id.

. On February 13, 2012, defendant filed an "Application to Submit and File Applicant's Opposition and Rebuttal to the State District Attorney’s Response Brief.” This filing was untimely whether it is considered a pro se brief or a reply brief. A pro se briefing notice and a copy of the brief filed on defendant’s behalf was mailed to him on November 28, 2011, thus defendant had 30 days or until December 28, 2011, to file a pro se brief as provided for in Fifth Circuit Court of Appeal Rule 6-1. According to Rule 2-12.7 of the Uniform Rules for the Courts of Appeal, defendant had 10 days after the filing of the State’s brief to file a response. The state's brief was filed on January 19, 2012, thus defendant had until January 29, 2012 to file a reply brief. Moreover, a review of the arguments made by defendant in this document are the same as those raised in his counseled brief, namely that the evidence was not sufficient to prove his identity and that the trial judge should have granted the motion to sever. For the reasons stated herein, we have found these arguments to be without merit.

. See also, State v. Morgan, 45,110, pp. 1-8 (La.App. 2 Cir. 4/14/10), 34 So.3d 1127, 1130-34, writ denied sub nom., State ex rel. Morgan v. State, 10-1201 (La.5/27/11), 63 So.3d 992, in which the defendant’s three convictions of aggravated rape based solely on DNA evidence were upheld.

. These statements were proffered by defendant.